IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADAM KEITH PEDERSEN,<br><br>Petitioner,<br><br>v.<br><br>COLLETTE RENEE SHRIVER,<br><br>Respondent. | No. 23-cv-13836<br><br>Judge John F. Kness |

## MEMORANDUM OPINION AND ORDER

Petitioner Adam Keith Pedersen asks this Court to strike portions of Respondent Collette Renee Shriver's answer and affirmative defenses because under the doctrine of comity, several allegations raised in Respondent's answer were previously adjudicated by an Australian family court. But because the Australian court decided an issue of custody, not an issue under the Hague Convention, neither issue preclusion nor the doctrine of comity can support striking the challenged material in Respondent's answer. As a result, and for the reasons provided more fully below, the Court denies Petitioner's motion to strike (Dkt. 16) in its entirety.

**I.     BACKGROUND**

As alleged in the pleadings, Petitioner, an Australian citizen, and Respondent, a United States citizen, met in Australia while Respondent was visiting on a working visa. (Dkt. 1 ¶¶ 1, 8, 9.) They were married in Australia on September 23, 2017, approximately nine weeks after they met. (Dkt. 1 ¶ 10.) The parties have one son

together, R.P., born in Australia in 2018. (*Id.* ¶¶ 1, 10.) When their marriage became tumultuous, Petitioner and Respondent separated in November 2019. (*Id.* ¶¶ 15–16.) On October 30, 2020, Petitioner filed an initiating application and corresponding affidavit in the Federal Circuit and Family Court of Australia (the "Australian Court"), officially initiating a child custody case. (*Id.* ¶ 35.)

During and after the custody proceedings in the Australian Court, Respondent made several reports against Petitioner, alleging that he verbally, physically, and sexually abused R.P. Respondent filed her first report against Petitioner on September 24, 2020, to the Child Protection Division of the Department of Families, Fairness, and Housing ("DFFH"), an Australian government agency. (Dkt. 1 ¶ 27.) DFFH investigated this report and concluded that Petitioner was attentive and affectionate toward R.P. but that R.P. "was at risk of emotional harm" due to the ongoing conflict between his parents. (*Id.* ¶¶ 28–29; Dkt. 1-4 at 2–3.) In October 2020, Respondent applied for and obtained a Family Violence Intervention Order against Petitioner, listing herself and R.P. as protected parties. (Dkt. 1 ¶¶ 32–33.) Several days later, DFFH informed Petitioner that, due to Respondent's abuse allegations, his future parenting time with R.P. needed to be professionally supervised by a DFFH employee. (*Id.* ¶ 34.) It was around this time that Petitioner initiated custody proceedings. (*Id.* ¶ 35.) By February 2021, DFFH determined that Petitioner posed "no concerns" and terminated the need for supervised sessions. (*Id.* ¶¶ 37–39; Dkt. 1-4 at 3.) Throughout the next few months, the Australian Court increased Petitioner's weekly parenting time. (Dkt. 1 ¶¶ 41, 43; Dkt. 1-7; Dkt. 1-8.) In early 2022, the

2

Australian Court ordered DFFH to prepare a second report relating to R.P.'s relationship with Respondent and Petitioner. (Dkt. 1 ¶ 47.) DFFH's report revealed that Respondent had contacted DFFH at least seven times over the preceding twelve months alleging abuse by Petitioner. (*Id.* ¶ 47; Dkt. 1-4 at 6.) DFFH investigated all seven accusations and found that R.P. was safe in the care of either parent. (Dkt. 1-4 at 6.) DFFH added that it found "no significant or imminent risk of harm to [R.P.]" in relation to the abuse allegations, and it "assessed [Respondent] as responsible for harm given her ongoing impact on [R.P.]'s emotional wellbeing, and the constant exposure to her poor mental health." (Dkt. 1 ¶¶ 48–50; Dkt. 1-4 at 6.)

Custody proceedings continued, and after a nine-day trial in October and November 2022, the Australian Court awarded Petitioner and Respondent equal parental responsibility for R.P. (*Id.* ¶¶ 55, 59; Dkt. 1-10 at 3.) Both parties were required to keep each other informed of their current residential address and contact information and were prohibited from relocating with R.P. without written agreement or court order. (Dkt. 1 ¶ 62; Dkt. 1-10 at 6.)

After the Australian Court issued its final judgment, Respondent continued to allege that Petitioner was sexually abusing R.P. Respondent filed claims for abuse in March and April 2023. (Dkt. 1 ¶¶ 69, 71.) Both allegations were investigated, revealing "no offense detected" and no physical indications of sexual abuse. (*Id.* ¶¶ 70, 71.) On April 20, 2023, Respondent applied for an Intervention Order with an Australian court, making similar claims of abuse against Petitioner. (*Id.* ¶ 73; Dkt.

3

16-13.) A hearing on this Intervention Order was scheduled for April 27, 2023. (*Id.* ¶ 79.)

On April 21, 2023, Respondent did not appear at a scheduled changeover location to deliver R.P. to Petitioner. (Dkt. 1 ¶ 74.) With the assistance of Australian and United States law enforcement, Petitioner discovered that Respondent and R.P. had fled Australia and relocated at Respondent's mother's home in Woodstock, Illinois. (*Id.* ¶¶ 75–78, 82–86.) The April 27 hearing on the application for an Intervention Order was held in Respondent's absence, and the court "struck out" her application. (*Id.* ¶¶ 79–81.)

R.P. currently remains in Illinois, and Petitioner filed this action to secure R.P.'s return. This petition is filed pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, commonly known as the Hague Convention (the "Convention"), of which the United States and Australia are both signatories. Respondent filed an answer and affirmative defense, raising the grave risk of harm exception. (Dkt. 14.) Respondent's affirmative defense argument is that this Court is not bound to return R.P. to Australia because Petitioner presents a grave risk of harm to R.P. (*Id.*) Respondent supports her argument with largely the same violence and abuse allegations that she raised—and that the Australian Court considered—during the custody proceedings. (*Id.*) Petitioner now moves to strike several paragraphs and affirmative defense allegations from the answer, arguing that the Court should apply the doctrine of comity to preclude Respondent from raising the abuse allegations that Petitioner believes have been previously raised and adjudicated by the Australian

4

Court during custody proceedings. (Dkt. 16.) Respondent filed a response brief (Dkt. 17), and Petitioner filed a reply brief (Dkt. 18), and, at the Court's request, both parties filed supplemental briefings on the application of comity and res judicata (Dkt. 26; Dkt. 27).

## II. STANDARD OF REVIEW

Rule 12(f) of the Federal Rules of Civil Procedure permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A court has "considerable discretion" in considering a Rule 12(f) motion. *Delta Consulting Grp., Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009). Motions to strike are generally disfavored, as they often delay the proceedings; thus, a "court ordinarily will not strike a matter unless it can confidently conclude that the portion of the pleading the motion addresses has no possible relation to the controversy and is clearly prejudicial." *Weston v. City of Chicago*, No. 20 C 6189, 2021 WL 2156459, at *11 (N.D. Ill. May 27, 2021); *see also Wilkins et al. v. City of Chi. & Chi. Police Dep't*, No. 23-cv-4072, 2024 WL 2892840, at *6 (N. D. Ill. June 10, 2024).

## III. DISCUSSION

### A. The Hague Convention

The Hague Convention, to which both Australia and the United States are signatories, is an international treaty on parental kidnapping. The Hague Convention is not a forum for child custody proceedings, and courts adjudicating Hague Convention petitions must not determine the merits of any underlying child

5

custody claims. *Baz v. Patterson*, 100 F.4th 854, 865 (7th Cir. 2024). Rather, the Hague Convention seeks "to secure the prompt return of children wrongfully removed to or retained in any Contracting State." Hague Convention, Oct. 25, 1980, Art. 1(a); *see Chafin v. Chafin*, 568 U.S. 165, 178 (2013). The International Child Abduction Remedies Act ("ICARA") implements the Hague Convention in the United States. *See* 22 U.S.C. § 9001; *Baz*, 100 F.4th at 864. ICARA permits a parent of a wrongfully removed or retained child to petition United States courts for the return of that child. *Baz*, 100 F.4th at 865. To determine whether a child was wrongfully removed, the court must apply a four-part inquiry: (1) when the removal occurred; (2) what the child's habitual residence was immediately before the removal; (3) whether the removal was in breach of the custody rights of the petitioning parent; and (4) whether the petitioning parent was exercising those rights at the time of removal. *Id.* at 865–66. If the petitioning parent can prove these elements, the child must be returned to his or her habitual residence unless the defendant can establish a defense. *Id.* at 865; *Blondin v. Dubois*, 189 F.3d 240, 245 (2d Cir. 1999). One such defense excuses return of the child if "there is a grave risk that [the child's] return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." *Van De Sande v. Van De Sande*, 431 F.3d 567, 569 (7th Cir. 2005) (quoting 42 U.S.C. § 11603(e)(2)(A)). Ultimately, the "paramount" concern of the Hague Convention is "the safety of children," in whatever country that may be. *Id.* at 572.

Petitioner brings his complaint under the Hague Convention and ICARA, arguing that Respondent wrongfully removed R.P. from Australia to the United

6

States. (Dkt. 1.) Respondent argues in response that returning R.P. to Australia would expose him to a grave risk of harm, so R.P. should remain in the United States. (Dkt. 14.) Specifically, Respondent raises many of the same abuse and violence allegations she raised against Petitioner in the Australian court custody proceedings in support of her argument that a grave risk of harm would exist if the Court required R.P. to return to Australia. (*Id.* at 26–30.) Petitioner moves to strike these allegations. (Dkt. 16.) According to Petitioner, Respondent's grave risk of harm defense is "almost entirely an attempt to re-litigate her false, albeit salacious, allegations in a new venue, hoping for a different outcome than she received the first time." (*Id.* ¶ 30.)

Petitioner asks this Court to afford deference to the Australian Court's adjudications that "determined [Respondent's] allegations to be false." (Dkt. 16-1 at 1.) Petitioner argues that deferring to the Australian Court's custody determinations is appropriate under the doctrine of comity, a doctrine that stands "at the heart of the [Hague] Convention." (*Id.* at 5.) Plaintiff urges this Court to use its discretion to extend comity to the Australian Court's adjudications, so that Respondent's abuse allegations need not be "tried afresh." (*Id.* at 4.) Respondent argues that the principles of international comity do not apply to the Australian Court's custody determinations because the Australian Court did not decide the same issues that are before this Court, and because the Australian Court's custody determination offends United States public policy and procedure. (Dkt. 17.) For the reasons that follow, the Court declines to extend comity and denies Petitioner's motion to strike in its entirety.

7

### B. Comity and the Hague Convention

Comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation." *Hilton v. Guyot*, 159 U.S. 113, 163 (1895). As a general matter, "American courts will normally accord considerable deference to foreign adjudications as a matter of comity." *Diorinou v. Mezitis*, 237 F.3d 133, 142 (2d Cir. 2001). But courts are not entitled to extend comity on issues the foreign court did not decide. *Jiangsu Beier Decoration Materials Co., Ltd. V. Angle World LLC*, 52 F.4th 554, 563 (3d Cir. 2022).

A handful of United States federal courts have discussed extending comity in Hague Convention cases. The Second Circuit has stated that extending comity to a foreign court's Hague-related adjudication is an exercise of "trust in the court of the home country to issue whatever orders may be necessary to safeguard children who come before it." *Blondin*, 189 F.3d at 249. But as the Ninth Circuit has held, comity in the context of the Hague Convention is not a "matter of absolute obligation" or "courtesy;" rather, a court can choose to extend comity after "a more searching inquiry into the propriety of the foreign court's application of the [Hague] Convention." *Asvesta v. Petroutsas*, 580 F.3d 1000, 1011, 1013 (9th Cir. 2009). In conducting this "more searching inquiry," courts focus on "considerations of due process and fairness." *Id.* at 1013. Courts will not extend comity if the foreign court did not act "in accordance with the Hague Convention" and "made custody determinations in direct contravention of both the letter and the spirit of the Hague Convention." *Carrascosa v. McGuire*, 520 F.3d 249, 262–63 (3d Cir. 2008).

8

Petitioner cites these cases and others to argue that this Court should extend comity from the Australian Court's custody proceedings to the Hague Convention petition before this Court. But the majority of cases entertaining the extension of comity in Hague Convention matters speak only of extending comity to the foreign court's related Hague petition, not to the foreign court's unrelated custody decision (or, for that matter, *any* non-Hague petition).[1] And when a court adjudicating a Hague petition is considering extending comity to a related Hague petition in a foreign court, it analyzes whether that foreign court properly applied and interpreted the Convention.

In *Diorinou v. Mezitis*, for example, the Second Circuit, adjudicating a Hague petition on appeal, extended comity to a Greek court which had previously adjudicated a Hague petition for the same parties. *Diorinou*, 237 F.3d at 145. The *Diorinou* court extended comity after recognizing that the pending petition could be resolved "by deferring to the decisions of the Greek courts on the Greek Hague petition," which were "reasonably" made. *Id.* at 147.

The Ninth Circuit has similarly held that "where comity is at issue, a court properly begins its analysis 'with an inclination to accord deference to' a foreign

---

[1] Even ICARA's full faith and credit clause only permits federal courts to accord full faith and credit to another court's judgment of a *related* Hague petition. *See Holder v. Holder*, 305 F.3d 854, 8964 (9th Cir. 2002) (quoting 42 U.S.C. § 11603(g)) ("Full faith and credit shall be accorded by the courts of the States and the courts of the United States to the judgment of any other such court ordering or denying the return of a child *pursuant to the Convention, in an action brought under this chapter*." (emphasis in original)). But this full faith and credit provision is not dispositive here, as it only applies to judgments of courts within the United States, not judgments rendered in foreign countries. *See Diorinou*, 237 F.3d at 142 (citing Restatement (Second) of Conflicts of Laws § 98 cmt. B (1971)).

9

court's adjudication of a *related* Hague petition." *Asvesta*, 580 F.3d at 1011 (quoting *Diorinou*, 237 F.3d at 145). In *Asvesta*, a Greek court had previously denied the defendant father's Hague petition seeking to return his minor child from Greece to the United States. *Id.* at 1006–08. After the Greek court denied the petition, the defendant fled with the child to the United States. *Id.* at 1008. The plaintiff mother then filed her own Hague petition in the United States, seeking to return the child to Greece—the child's home as decided by the Greek court. *Id.* The Ninth Circuit considered whether the district court properly extended comity to the Greek court's related Hague Convention judgment, ultimately concluding that comity was unwarranted based on the foreign court's misapplication of and departure from the "fundamental premises of the Hague Convention." *Id.* at 1013–21. *See also Smedley v. Smedley*, 772 F.3d 184 (4th Cir. 2014) (appropriate for district court adjudicating a Hague petition filed by mother to afford comity to German court's adjudication of previous Hague petition filed by father); *Trott v. Trott*, No. 20-CV-1392, 2020 WL 4926336 (E.D.N.Y. Aug. 21, 2020) (district court adjudicating a Hague petition entitled to show comity to a Bermuda court's previous Hague petition decision).

These cases show that extending comity in a Hague Convention case is primarily limited to situations where a party seeks to extend comity to a foreign court's previously adjudicated Hague petition involving the same parties. If that precondition is met, the next question becomes whether the foreign court that adjudicated the first petition properly applied and interpreted the Hague Convention.

10

But the circumstances in the case before this Court are materially different. There is no previous related Hague petition: there is only a custody decision rendered by an Australian court. Other cases have suggested it would be inappropriate for a court to extend comity based on one case involving a Hague petition and another case that does not involve a Hague petition *unless* the cases are sufficiently similar. For example, in *Holder v. Holder*, the Ninth Circuit reversed the district court's decision to stay Hague Convention proceedings pending the resolution of state custody proceedings "in the interests of comity." *Holder*, 305 F.3d at 867 (quoting *Holder v. Holder*, No. C00-1927C, 2001 WL 34787138, at *8 (W.D. Wash. Apr. 16, 2001)). *Holder* explained that the stay was inappropriate, and the district court should not have accorded "preclusive effect to the state court's determination of the various issues involved in the state custody suit." *Id.* at 868. Extending comity in this way was improper because "the issues relevant to the adjudication of a Hague Convention petition are distinct from those relevant to a custody determination under state law." *Id.* Because the parties could not point to any state court custody findings that would be relevant to certain legal issues in the context of the Hague Convention, the Ninth Circuit found that the cases were not substantially similar enough for comity to be extended. *Id.* at 869.

The Northern District of Ohio made a similar finding in *Pawananun v. Pettit*, No. 20CV1081, 2020 WL 4462255 (N.D. Ohio Aug. 4, 2020). In *Pawananun*, the divorced plaintiff and defendant shared custody of their two daughters under divorce proceedings in a Thai court. *Pawananun*, 2020 WL 4462255, at *1. The defendant

11

(the children's father) later filed another Thai lawsuit attempting to remove the plaintiff's (the children's mother) custody rights, alleging that the plaintiff's new partner was abusing the children. *Id.* The Thai court considered evidence of the abuse allegations before ultimately deciding not to revoke the plaintiff's custody rights. *Id.* The defendant then removed the children from Thailand to the United States. *Id.* at *2. After the plaintiff filed a Hague petition to return the children to Thailand, the defendant attempted to justify his actions on the basis that returning the children to their mother in Thailand would present a grave risk of harm. *Id.* The plaintiff moved to strike the defendant's defense, arguing that comity precluded the defendant from reraising the abuse allegations. *Id.*

*Pawananun* refused to extend comity to the Thai court decision. According to the *Pawananun* court, this was necessary because "the Thai Court did not adjudicate *a related Hague petition.*" *Id.* at *3. As the court noted, the "majority of caselaw analyzing comity under the Convention discusses the issue when the foreign court has previously ruled on a Convention petition," and in such cases, the main issue then becomes whether the foreign court properly applied the Convention. *Id.* But *Pawananun* did not involve a previous Hague petition, so the court did not extend comity. *Id.*

At bottom, both *Holder* and *Pawananun* stand for the proposition that, although federal courts often extend comity to foreign courts' adjudications, those adjudications are not entitled to comity on issues that the foreign court did not decide. *See Jiangsu*, 52 F.4th at 565.

12

### C. Analysis

Petitioner argues that several paragraphs in Respondent's answer and affirmative defenses must be stricken under the doctrine of comity. According to Petitioner, Respondent's answer raises the same "false" and "salacious" abuse allegations against Petitioner in an attempt to relitigate issues that were already decided by the Australian Court. (Dkt. 16 ¶¶ 30, 31.) Petitioner cites DFFH's multiple investigations conducted in response to Respondent's previous abuse allegations, which the Australian Court considered in custody proceedings and which are essentially the same allegations that she now brings in her answer; accordingly, Petitioner contends that those allegations have already been considered and adjudicated and should not be reraised or relitigated in this forum. (*Id.* ¶¶ 30–34.)

Petitioner's primary argument in support of his position is that it is within a court's discretion to afford comity to a foreign court's adjudication, so this Court should use its discretion to extend comity to the Australian Court's determinations of Respondent's abuse allegations. (Dkt. 16-1 at 3–6.) Petitioner argues that because "comity is at the heart of the Convention," it would be a proper exercise of this Court's discretion to extend comity to the Australian Court's custody proceedings so long as the Australian Court also comported with due process. (*Id.* at 5–6.) Petitioner contends that such an application of comity "is precisely the exercise of discretion intended by the Convention." (*Id.* at 7.)

Respondent counters that this Court cannot extend "full faith and credit" (apparently meaning comity) to the Australian Court because it adjudicated different

13

legal and factual issues than the issues presented in this Petition. (Dkt. 17 at 5–13.) Respondent argues further that comity is not appropriate because the safety of the child is the paramount goal of the Hague Convention, which means that the " 'grave risk' exception . . . supersedes the principles and purposes of comity." (*Id.* at 14–19.) Respondent also argues at length against the extension of comity because the Australian Court purportedly offended United States public policy and procedure. (*Id.* at 19–23.)

Although Petitioner is correct that the decision to extend comity is within a court's discretion, the answer is not always that straightforward in Hague Convention cases. Most Hague Convention cases that have raised questions of comity involve situations where a foreign court had already adjudicated a related Hague petition, and the United States court has before it a new Hague petition involving the same parties. *See, e.g.*, *Diorinou*, 237 F.3d 133; *Asvesta*, 580 F.3d 1000; *Smedley*, 772 F.3d 184; *Trott*, 2020 WL 4926336. In such a case, comity is extended if the foreign court has properly applied and interpreted the Convention. *See id.*

That is not the situation here. Petitioner seeks to extend comity to a non-Hague-related case, much like in *Holder* or *Pawananun*; indeed, the circumstances here are nearly identical to those in *Pawananun*, where the court declined to extend comity to the foreign court's decision.[2] The petition before this Court involves new

---

[2] Petitioner argues in its supplemental briefing that *Pawananun* is distinguishable from the present action because the district court in that case had no additional information beyond an opinion from the foreign court, but this Court has "full access to Australian law, evidentiary burdens, and what evidence was . . . presented." (Dkt. 27 at 6-7.) But *Pawananun* expressly stated that, because the foreign court decided a different issue than a Hague

14

issues (such as habitual residence and grave risk of harm, among others) that the Australian Court did not have the occasion to consider. In view of these differences, affording comity to the Australian proceeding would be inappropriate.

In supplemental briefing, Petitioner argues that federal courts have "routinely" extended comity to a foreign court's custody determination when adjudicating the *prima facie* elements of a Hague Convention petition. (Dkt. 27 at 3–6.) Petitioner cites several cases in support of this argument. (*Id.*) *See Rodriguez Palomo v. Howard*, 426 F. Supp. 3d 160, 178 (M.D.N.C. Dec. 6, 2019); *Miller v. Miller*, 240 F.3d 392, 399–402 (4th Cir. 2001); *Ohlander v. Larson*, 114 F.3d 1531, 1541 (10th Cir. 1997). It is true that federal courts have extended comity to a foreign court's custody decision when adjudicating the *prima facie* elements of a Hague petition, refusing to relitigate custody determinations from a foreign court and instead deferring to that court's custody decisions. But it is also true that this Court is not adjudicating the *prima facie* elements of Petitioner's Hague petition on the pleadings. Petitioner asks for more than the extension of custody to an element of a Hague petition; rather, he seeks to preclude Respondent from making certain allegations in support of a grave risk of harm defense. For the foregoing reasons, extending comity under these circumstances would be inappropriate.

### D. The Hague Convention and Res Judicata

Petitioner also argues that this Court should grant its motion to strike because both branches of the doctrine of res judicata—issue preclusion and claim preclusion—

---

Convention petition, extending comity was not appropriate. *Pawananun*, 2020 WL 4462255, at *3. So too here.

bar relitigating Respondent's allegations. (Dkt. 27 at 10–13.) Respondent disagrees. (Dkt. 26 at 2–10.)

Res judicata precludes the relitigation of claims or issues that have already been raised or should have been raised in a previous case. *See Alvear-Velez v. Mukasey*, 540 F.3d 672 (7th Cir. 2008). Res judicata (claim or issue preclusion) is appropriate when three elements are met: (1) identity of parties, (2) identity of claims, and (3) an earlier final judgment on the merits. *Daza v. State*, 2 F.4th 681, 683 (7th Cir. 2021). Issue preclusion as a doctrine " 'bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Cannon v. Armstrong Containers Inc.*, 92 F.4th 688, 705–06 (7th Cir. 2024) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)). But "ordinary principles of claim and issue preclusion do not apply to claims under ICARA and the Convention." *Gaudin v. Remis*, 415 F.3d 1028 (9th Cir. 2005). Federal courts hesitate to apply the doctrine of res judicata to preclude parties from making arguments in Hague Convention cases, because doing so can "render the Convention an incompetent remedy for the very problem that it was ratified to address." *Rodriguez Palomo*, 426 F. Supp. 3d at 179 (quoting *Holder*, 305 F.3d at 865); *see also Gaudin*, 415 F.3d at 1034.

Accordingly, this Court will not apply either claim preclusion or issue preclusion to prevent Respondent from raising the disputed allegations in her answer and affirmative defense. Petitioner argues that claim preclusion must apply because

16

this Hague petition is based on the same operative facts (the abuse allegations) as the custody proceedings in Australia. (Dkt. 27 at 11–12.) Strictly speaking, that assertion is not correct, as this Hague petition is based not only on abuse allegations, but also on the additional fact that R.P. was removed from Australia and taken to the United States. Although some overlap exists between the two cases, much has transpired since the Australian Court's custody proceedings. For similar reasons, issue preclusion does not apply: the issue raised in Respondent's answer is the grave risk of harm defense, which the Australian Court did not adjudicate. Because Petitioner cannot meet all elements of either claim preclusion or issue preclusion, neither can work to bar Respondent from raising the allegations she has raised in her answer and affirmative defenses.

## IV.   CONCLUSION

Petitioner's motion to strike is denied.

SO ORDERED in No. 23-cv-13836.

Date: August 8, 2024

JOHN F. KNESS
United States District Judge